IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY HIGBEE,

    Petitioner,                   No. CIV S-08-2345 MCE DAD

    vs.

R. CAMBELL, Warden,

    Respondent.              FINDINGS & RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges the decision of the California Board of Parole Hearings (hereinafter "Board") to deny him parole for four years at his parole consideration hearing held on April 20, 2006. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

## PROCEDURAL BACKGROUND

        On October 9, 1987, in the Los Angeles County Superior Court, petitioner entered a plea of guilty to second degree murder and was later sentenced to fifteen years to life, plus one-year and a five-year enhancements to be served consecutively. Answer, Ex. A. This sentence was to be served consecutively to a six-year sentence imposed on petitioner in another case. Id.

On April 20, 2006, following a hearing, the Board found that petitioner was unsuitable for release on parole, and denied parole for four years. Pet., Ex. 3 at 87. Petitioner challenged the Board's decision in a petition for writ of habeas corpus filed in the Los Angeles County Superior Court. Answer, Ex. B at 5. That petition was denied in a reasoned decision on April 13, 2007. Id., Ex. C. Petitioner subsequently filed habeas petitions in the California Court of Appeal and the California Supreme Court, both of which were summarily denied on January 17, 2008 and September 10, 2008, respectively. Id., Ex. D; Pet. at 8.

FACTUAL BACKGROUND

The Board described the facts of petitioner's offense of commitment at the April 20, 2006 parole suitability hearing as follows:

> The inmate [met] the victim at a liquor store and they agreed to go out together to drink alcohol. Sometime during the night, during which they had consumed a considerable amount of alcohol, the defendant hit the victim with his belt...[killed her, and] cut off pubic hairs as well cutting off portions of the [breast]. When [petitioner] sobered, the impact of what he had done hit him, he told his family that he had done something terrible. The family notified the police in Glendale, however, they could not verify [his] story and no charges were filed at that time. Approximately eight days after the killing, one of the members of the [petitioner's] family found the victim's body and notified the Norwalk Sheriff's Station. The next day, the family brought [petitioner] to the Sheriff's Station where he was arrested.

Pet., Ex. 3 at 30-31.

ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas

2

corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). See also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).

3

II. Petitioner's Claims

Petitioner claims that the Board violated his due process and first amendment rights by finding that he was unsuitable for parole based on his past substance abuse and his lack of participation in AA or NA. (Pet. at 3; Traverse at 4-6.) Petitioner also seeks an order from this court directing that his prison records be modified to reflect that his sentence is 15 years to life in prison plus sentencing enhancements, rather than 27 years to life in prison. (Pet. at 5.)

A. Due Process in the California Parole Context

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. One alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 891, 900 (9th Cir. 2002) (McQuillion I).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution or state laws. Bd. of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." McQuillion I, 306 F.3d at 901 (quoting Greenholtz v. Inmates of Neb. Penal, 442 U.S. 1, 12 (1979)).

California's parole scheme gives rise to a cognizable liberty interest in release on parole, even for prisoners who have not already been granted a parole date. Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion I, 306 F.3d at 903; see also In re Lawrence, 44 Cal. 4th 1181, 1204, 1210, 1221 (2008). Accordingly, this court must examine whether California provided the

4

constitutionally required procedural safeguards when depriving petitioner of a protected liberty interest and, if not, whether the state courts' conclusion that it did was contrary to or an unreasonable application of clearly established federal law.

In this regard, it is clearly established federal law that a parole board's decision deprives a prisoner of due process with respect to his constitutionally protected liberty interest in a parole release date if the Board's decision is not supported by "some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 457 (1985); Irons v. Carey, 505 F.3d 846, 851 (9th Cir. 2007); Sass, 461 F.3d at 1128; Biggs, 334 F.3d at 915.  "The 'some evidence' standard is minimally stringent," and a decision will be upheld under that standard if there is any evidence in the record that could support the conclusion reached by the factfinder.  Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)).  See also Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).  However, "the evidence underlying the board's decision must have some indicia of reliability."  Jancsek v. Or. Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).  See also Perveler v. Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992).  Determining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence.  Toussaint, 801 F.2d at 1105.  The question is whether there is any reliable evidence in the record that could support the conclusion reached.  Id.

When assessing whether a state parole board's suitability decision was supported by "some evidence," the analysis "is framed by the statutes and regulations governing parole suitability determinations in the relevant state."  Irons, 505 F.3d at 851.   Therefore, this court must:

> look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by "some evidence" in [petitioner's] case constituted an unreasonable application of the "some evidence" principle articulated in Hill.

/////

5

(Id.)

Under California law, prisoners serving indeterminate prison sentences "may serve up to life in prison, but they become eligible for parole consideration after serving minimum terms of confinement." In re Dannenberg, 34 Cal. 4th 1061, 1078 (2005). The Board normally sets a parole release date one year prior to the inmate's minimum eligible parole release date, and does so "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public." In re Lawrence, 44 Cal. 4th at 1202 (citing California Penal Code § 3041(a)). A release date must be set "unless [the Board] determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ." Cal. Penal Code § 3041(b).

In order to carry out the mandate of § 3041, the Board must determine "whether the inmate poses 'an unreasonable risk of danger to society if released from prison,' and thus whether he or she is suitable for parole." In re Lawrence, 44 Cal. 4th at 1202 (citing California Code Regs., tit. 15, § 2281(a)). In doing so, the Board must consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

Cal. Code Regs., tit. 15, § 2281(b).

The regulation identifies circumstances that tend to show suitability or unsuitability for release. Cal. Code Regs., tit. 15, § 2281(c) & (d). The following circumstances have been identified as tending to show that a prisoner is suitable for release: (1) the prisoner has

no juvenile record of assaulting others or committing crimes with a potential of personal harm to victims; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has performed acts that tend to indicate the presence of remorse or has given indications that he understands the nature and magnitude of his offense; (4) the prisoner committed his crime as the result of significant stress in his life; (5) the prisoner's criminal behavior resulted from having been victimized by battered women syndrome; (6) the prisoner lacks a significant history of violent crime; (7) the prisoner's present age reduces the probability of recidivism; (8) the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release; and (9) institutional activities indicate an enhanced ability to function within the law upon release.  Cal. Code Regs., tit. 15, § 2281(d).

The following circumstances have been identified as tending to indicate unsuitability for release: (1) the prisoner committed the offense in an especially heinous, atrocious, or cruel manner; (2) the prisoner had a previous record of violence; (3) the prisoner has an unstable social history; (4) the prisoner's crime was a sadistic sexual offense; (5) the prisoner had a lengthy history of severe mental problems related to the offense; and (6) the prisoner has engaged in serious misconduct in prison.  Cal. Code Regs., tit. 15, § 2281(c).  Factors to consider in deciding whether the prisoner's offense was committed in an especially heinous, atrocious, or cruel manner include: (A) multiple victims were attacked, injured, or killed in the same or separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled or mutilated during or after the offense; (D) the offense was carried out in a manner that demonstrated an exceptionally callous disregard for human suffering; and (E) the motive for the crime is inexplicable or very trivial in relation to the offense.  Id. § 2281(c)(1)(A) - (E).

The overriding concern in determining parole suitability under California law is public safety.  Dannenberg, 34 Cal. 4th at 1086.  This "core determination of 'public safety'. . . involves an assessment of an inmates current dangerousness."  Lawrence, 44 Cal. 4th at 1205

(emphasis in original).  See also Cal. Code Regs. tit. 15, § 2281(a) ("Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.")  Accordingly, California law provides that,

> when a court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings.

Lawrence, 44 Cal. 4th at 1212 (citing In re Rosenkrantz, 29 Cal. 4th 616, 658 (2002); Dannenberg, 34 Cal. 4th at 1071; and In re Lee, 143 Cal. App. 4th 1400, 1408 (2006)).

In recent years the Ninth Circuit Court of Appeals has concluded that, given the liberty interest that California prisoners have in their release on parole, a continued reliance upon an unchanging factor to support a finding of unsuitability for parole may, over time, constitute a violation of due process.  The court has addressed the issue in three significant cases, each of which will be discussed below.

First, in Biggs, the Ninth Circuit Court of Appeals recognized that a continued reliance on an unchanging factor to deny parole, such as the circumstances of the offense, could at some point result in a due process violation.[1]  While the court in Biggs rejected several of the reasons given by the Board for finding the petitioner in that case unsuitable for parole, it upheld three: (1) petitioner's commitment offense involved the murder of a witness; (2) the murder was carried out in a manner exhibiting a callous disregard for the life and suffering of another; and (3) petitioner could benefit from therapy.  Biggs, 334 F.3d at 913.  However, the court in Biggs cautioned that continued reliance solely upon the gravity of the offense of conviction and petitioner's conduct prior to committing that offense in denying parole could, at some point, violate due process.  In this regard, the court observed:

---

[1] That holding has been acknowledged as representing the law of the circuit.  Irons, 505 F.3d at 853; Sass, 461 F.3d at 1129.

8

> As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law.  Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole.

Id. at 916.  The court in Biggs also stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."  Biggs. 334 F.3d at 917.

In Sass, the Board found the petitioner unsuitable for parole at his third suitability hearing based on the gravity of his offenses of conviction in combination with his prior offenses.  461 F.3d at 1126.  Citing the decision in Biggs, the petitioner in Sass contended that reliance on these unchanging factors to deny him parole violated due process.  The court disagreed, concluding that these factors amounted to "some evidence" to support the Board's determination.  Id. at 1129.  The court provided the following explanation for its holding:

> While upholding an unsuitability determination based on these same factors, we previously acknowledged that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and *could* result in a due process violation."  Biggs, 334 F.3d at 917 (emphasis added).  Under AEDPA it is not our function to speculate about how future parole hearings could proceed.  Cf. id.  The evidence of Sass' prior offenses and the gravity of his convicted offenses constitute some evidence to support the Board's decision.  Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d).

Id.

In Irons, the Ninth Circuit sought to harmonize the holdings in Biggs and Sass, stating as follows:

9

> Because the murder Sass committed was less callous and cruel than the one committed by Irons, and because Sass was likewise denied parole in spite of exemplary conduct in prison and evidence of rehabilitation, our decision in Sass precludes us from accepting Irons' due process argument or otherwise affirming the district court's grant of relief.
>
> We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. Specifically, in Biggs, Sass, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. Biggs, 334 F.3d at 912; Sass, 461 F.3d at 1125. All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.
>
> Furthermore, we note that in Sass and in the case before us there was substantial evidence in the record demonstrating rehabilitation. In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes. Biggs, 334 F.3d at 917.

Irons, 505 F.3d at 853-54.[2]

      The Board found that petitioner was unsuitable for parole on April 20, 2006. (Pet., Ex. 3 at 82-87.) The Board gave the following reasons for its decision. The offense was

---

[2] The California Supreme Court has also acknowledged that the aggravated nature of the commitment offense, over time, may fail to provide some evidence that the inmate remains a current threat to public safety. In re Lawrence, 44 Cal. 4th at 1218-20 & n. 20. Additionally, a recent panel of the Ninth Circuit in Hayward v. Marshall, 512 F.3d 536, 546-47 (9th Cir. 2008), determined that under the "unusual circumstances" of that case the unchanging factor of the gravity of the petitioner's commitment offense did not constitute "some evidence" supporting the governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society. However, on May 16, 2008, the Court of Appeals decided to rehear that case en banc. Hayward v. Marshall, 527 F.3d 797 (9th Cir. 2008). Therefore, the panel decision in Hayward is no longer citable precedent.

10

carried out in a cruel and callous manner, as petitioner had anal sex with the victim and cut off some of her pubic hairs and portions of her breasts after he strangled her with a belt, and the victim was particularly vulnerable, as she was mentally challenged and drunk. Id. at 82-83. Petitioner had previously been convicted of sexual assault, and was on probation when he committed the murder. Id. at 83. Petitioner had stopped attending substance abuse classes. Id. Petitioner had a significant prison disciplinary record including four 128s and two serious 115s during his incarceration. Id. at 84. His psychiatric report stated that he had a moderate risk of violence, as he lacked prosocial attachment and had a history of inappropriate sexual activity. Id. Petitioner also lacked realistic parole plans if he were to be released. Id. The Board commended petitioner for remaining discipline free for the last five years, for his positive chronos, and for his participation in self-help programs. Id. at 85.

The Los Angeles County Superior Court denied petitioner habeas relief, finding that the record contained "some evidence" to support the Board's finding of unsuitability. That court wrote:

> Contrary to petitioner's assertions, the Board properly relied on petitioner's failure to attend NA, AA, or any other substance abuse program since 2003 as a factor denying parole. A prisoner's participation in therapy or self-help while incarcerated is evidence that indicates an enhanced ability to function within the law upon release, a factor that favors suitability. . . .In addition, the Board may rely on an inmate's lack of participation in a substance abuse program under the general provision that requires the parole authority to "consider [a]ll relevant, reliable information" in the suitability determination . . . . Here, the record shows that petitioner was addicted to narcotics/alcohol and committed the present crime while under the influence. Accordingly, the Board's reliance on petitioner's failure to participate in substance abuse programs since 2003 is supported by some evidence.
>
> Furthermore, the circumstances of petitioner's second-degree murder offense "exceed the minimum elements necessary to sustain a conviction" of second degree murder . . .
>
> Although the Board commended petitioner for the positive aspects of his behavior, they found that his positive behavior did not outweigh the factors of unsuitability. The Board's decision is supported by some evidence.

Answer, Ex. D at 12.

After taking into consideration the Ninth Circuit decisions in Biggs, Sass, and Irons, and for the reasons set forth below, this court concludes that petitioner is not entitled to federal habeas relief with respect to his due process challenge to the Board's April 20, 2006 decision denying him parole.[3] The court acknowledges that petitioner has remained discipline free for the last five years of his imprisonment, has positive chronos, and has participated in self-help programs. However, the Board's decision that petitioner was unsuitable for parole and that his release would unreasonably endanger public safety was supported by "some evidence" that bore indicia of reliability. Specifically, the Board relied on the circumstances of petitioner's conviction offense, his prior criminal history, his lack of participation in any substance abuse program since 2003, his prison disciplinary record, his psychiatric evaluation finding that he posed a moderate risk of violence, and his lack of realistic plans for release on parole. All of these factors cited by the Board are supported by the record before this court and, according to the cases discussed above, constitute "some evidence" supporting the Board's decision that petitioner was not yet suitable for release on parole at the time of his hearing in 2006. Sass, 469 F.3d at 1129; Irons, 505 F.3d at 665. Accordingly, petitioner is not entitled to relief on his claim that the Board's failure to find him suitable for parole at his April 20, 2006 parole suitability hearing violated his right to due process.

/////

/////

---

[3] Petitioner also contends that the Board failed to comply with state laws and regulations when it found him unsuitable for release on parole at the April 20, 2006 hearing. Petitioner's arguments that the state court has erred in applying state law are not cognizable in this federal habeas corpus proceeding. See Rivera v. Illinois, ___ U.S. ___, 129 S. Ct. 1446, 1454 (2009) ("[A] mere error of state law . . . is not a denial of due process") (quoting Engle v. Isaac, 456 U.S. 107, 121, n. 21 (1982) and Estelle v. McGuire, 502 U.S. 62, 67, 72-73 (1991)). A habeas court may not grant the writ on the basis of errors of state law where, as here, the combined effect of those errors does not violate the Federal Constitution. Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984); Parle v. Runnels, 387 F.3d 1030, 1045 (9th Cir. 2004).

B. <u>Petitioner's Other Claims</u>

Petitioner also claims that the Board violated his first amendment rights by denying him release on parole based on his history of substance abuse. (Pet. at 3)  In this regard, petitioner relies on the decision in <u>Thompson v. Davis</u>, 295 F.3d 890 (9th Cir. 2002).  In that case the Ninth Circuit held that under the ADA, a parole board may not categorically exclude a class of disabled people from consideration for parole because of their disabilities, in that case the disability of drug addiction.  295 F.3d at 898.  The court also held, however, that the ADA does not categorically bar a parole board from making an individualized assessment of the future dangerousness of an inmate by taking into account the inmate's history of addiction.  295 F.3d at 898, n. 4; <u>see</u> also <u>Turner v. Hickman</u>, 342 F. Supp. 2d 887, 897 (E.D. Cal. 2004) (requiring inmates, as a condition for being granted parole, to participate in a drug treatment program based on the concept of a higher power to which participants had to submit was prohibited by the Establishment Clause of the  First Amendment).  Petitioner's argument in this regard is unpersuasive.

Petitioner murdered and mutilated a woman while under the influence of alcohol.  The Board did not categorically deny petitioner parole because of his past addiction.  Neither did the Board require petitioner to attend a religious program in order to qualify for release on parole.  Instead, the Board merely and properly considered petitioner's failure to attend AA, NA **or any other secular substance abuse program** since 2003 as a factor in assessing his future dangerousness if released on parole in 2006.

Petitioner also contends that he is serving a sentence of 15 years to life in prison with consecutive sentencing enhancements terms of 6 years, and asks the court to issue an order stating that "he has served his term for the [e]nhancements and . . . . started his 15 to life sentence" in 1992. (Pet. at 5.)  It appears from the documents submitted to the court that petitioner was sentenced to fifteen years to life, with a term of six years on the sentencing enhancement allegations found to be trues, on his second degree murder conviction.  In addition, petitioner was sentenced to a six-year prison term for another crime, with that term to be served

consecutive to his sentence on the second degree murder conviction. (See Answer, Ex. A.) Petitioner has not presented convincing or coherent reasons in support of the issuance of the order he seeks from this court with respect to the sentence as reflected in his prison records. Accordingly, his request for this relief should be also denied.

III. Request for Evidentiary Hearing

In his traverse, petitioner requests an evidentiary hearing. Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the following circumstances:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense[.]

Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims for habeas relief and, if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999). See also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005). A petitioner requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief." Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d at 670, Stankewitz v. Woodford, 365 F.3d 706, 708 (9th Cir. 2004) and Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2001)). To show that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th

Cir. 1998) (internal quotation marks and citation omitted).

The court concludes that no additional factual supplementation is necessary in this case and that an evidentiary hearing is not appropriate with respect to the due process claim raised in the instant petition. The facts alleged in support of these claims, even if established at a hearing, would not entitle petitioner to federal habeas relief. Therefore, petitioner's request for an evidentiary hearing should be denied.

## CONCLUSION

For all the reasons set forth above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 16, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:rh
higbee2345.hc